## STATE *v.* WILLIAM ADAMS.

## (*Jackson.*   April Term, 1917.)

1. **STATUTES.   Pari materia.   Construction.**
   Pub. Acts 1915, chapter 127, section 1, providing that persons chargeable with care of a child under sixteen years of age, who shall willfully leave State after abandoning such child, shall be guilty of felony, is in *pari materia* with, and should be construed in connection with, chapter 120, section 1, making it a misdemeanor for any person charged with such care to fail to provide for a child.   (*Post, pp.* 524-526.)

   Acts cited and construed: Acts 1915, ch. 127, sec. 1.

   Constitution cited and construed: Art. 4, sec. 2.

2. **CONSTITUTIONAL LAW.   Abandonment of child,   Statute. Privileges and immunities.**
   Pub. Acts 1915, chapter 127, providing that person chargeable with care of a child under sixteen years of age, who shall willfully leave State after abandoning such child, shall be guilty of felony, unless he leaves the State to enter employment previously accepted, does not, when read in connection with chapter 120, section 1, abridge privileges or immunities of citizens contrary to Const. U. S. Amend. 14, cl. 2.   (*Post, pp.* 524-526.)

3. **CONSTITUTIONAL LAW.   Abandonment of child.   Statute. Class legislation.**
   Pub. Acts 1915, chapter 127, is not partial and discriminative, violating Const. art. 11, section 8, as a classification separating criminals from law-abiding people is proper.   (*Post, p.* 526.)

4. **CRIMINAL LAW.   Abandonment of child.   Venue.   Statute. Validity.**
   Pub. Acts 1915, chapter 127, section 1, making it a felony to leave State after abandoning a child, is not subject to objection that it is impossible to say from its terms where venue would lie in

view of Shannon's Code, section 6935, providing that when an offense is commenced within, but consummated without, State offender is liable to punishment therefore, and in such case the venue is in county where offense was commenced, and section .6936, providing that when an offense is committed partly in one county and partly in another the jurisdiction is in either. (*Post,* pp. 526-527.)

Code cited and construed: Sec. 6935(S).

---

## FROM WEAKLEY

---

Appeal from the Circuit Court of Weakley County. —Hon. JOSEPH E. JONES, Judge.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

T. K. REYNOLDS and L. E. HOLLADAY, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The defendant was indicted in the circuit court of Weakley county, for violation of section 1, chapter 127, of the Public Acts of 1915. Section 1 of the act reads:

"Any person legally chargeable with the care of a child under the age of sixteen years, who shall willfully leave the State of Tennessee, after abandoning such child and with intent to leave it destitute or liable to become a public charge, shall be guilty of a felony and, upon conviction, punishable by a fine not to exceed $500 or imprisonment in the State penitentiary at hard labor for a period of from one to three years or both."

Under section 2 the foregoing provisions do not apply where such person leaves the State to enter upon employment previously offered and accepted.

Under section 3 it is made the duty of the Governor to institute proceedings in extradition to obtain the body of any person violating section 1 where such person is still out of the State.

The indictment contains the following averments: That William Adams "on the ———day of June, 1915, in the county of Weakley, aforesaid, being the father of Mable Adams, a child under the age of sixteen years, and being legally chargeable with the care of said Mable Adams, did then and there unlawfully, feloniously and willfully leave the State of Tennessee, after abandoning the said Mable Adams in Weakley county, Tennessee, and in June, 1915, and with intent to leave said Mable Adams destitute and liable to become a public charge, and the said William Adams did not so leave the State of Tennessee, to accept employment previously offered and accepted."

The second count contains the same charge in slightly different language, the substance of the second count being that Adams deserted the child in Weakley county with intent to leave her destitute and liable to become a public charge, and permitted her to become destitute, and, immediately following the abandonment, unlawfully, willfully, and feloniously left the State to go to the State of Kentucky, and that he did not so leave the

State "to accept employment previously offered and accepted."

There was a motion to quash which contained several grounds. These may be summarized as follows: First, that the act is unconstitutional because in violation of the second clause of the Fourteenth Amendment of the Constitution of the United States, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; second, that the act is unconstitutional because in violation of article 11, section 8, of the Constitution of Tennessee, because it is partial and discriminative; third, because the act renders it impossible for the plaintiff to be tried by a jury of the county in which the crime was committed, because it is impossible to say from its terms where the venue would lie. The trial judge sustained the motion to quash, and the State appealed.

This act should be construed in connection with chapter 120 of the acts of the same year, the two acts being in *pari materia*. Section 1 of the latter act reads:

"It is declared to be a misdemeanor for any person legally chargeable with the care of a child under the age of sixteen years, to willfully and without good cause, neglect or fail to provide for such child, . . . or to leave it destitute, or in dager of becoming a public charge."

Other sections of that act make it the duty of the public authorities to arrest the person so offending, and require him to enter into a bond with sureties for

the support of his child, and in case of his failure to enter into such bond he is to be sentenced to a term in the workhouse for a period not exceeding eleven months and twenty-nine days.

Construing chapter 127, in connection with chapter 120, it is apparent that the legislature intended that where one had committed the crime denounced in chapter 120, and should willfully leave the State without a purpose to enter upon employment previously accepted, he should be guilty of a felony.

We are unable to see how any privilege or immunity of any citizen of the United States is abridged by the act under examination. It is not the privilege of any citizen of the United States to commit crime and run away from the State of his residence into a foreign State in order to escape punishment; on the contrary, it is especially provided in the federal Constitution, in article 4, section 2, second clause, that any person charged in any State with crime who shall flee justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime. From this it follows that although citizens of the United States have in general the right to pass from one State to another without hindrance, and likewise under article 4, section 2, the citizens of each State shall be entitled to all privileges and immunities of citizens of the Several States, no citizen of any State, although a citizen of the United States, has

the lawful right to abandon his State in order to escape the consequences of a crime which he has committed.

The second ground is equally without merit; indeed, its solution is involved in what we have already said. It is not improper to separate criminals from law-abiding people, and the classification which does this is altogether constitutional.

The third ground is also without merit. This is readily perceived when we consider sections 6935 and 6936 of Shannon's Code (Thompson's Edition). The first of these sections reads:

"When the commission of an offense commenced within this state is consummated without its boundaries, the offender is liable to punishment therefor; and, in such case, the jurisdiction is in the county where the offense was commenced."

The next section reads:

"When an offense is committed partly in one county and partly in another, or the acts or effects thereof constituting or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either county."

The offense denounced in section 1 of chapter 127 commences in the county where the abandonment takes place, and is consummated in the county from which the party passes out of this State into some adjoining State; so, in case the county last mentioned is different from the county in which the offense began, the jurisdiction would be in either; and if there is only one county, as in the case of Weakley, bordering upon

State  v.  Adams.

the State of Kentucky and the offense is begun in Weakley county and the party goes immediately across the line into Kentucky, the crime is consummated on his passing over the line, and the jurisdiction would be in Weakley county.   Consequently there is no difficulty about the venue, and no obstacle in the way of the defendant's being tried by a jury of the county in which the crime was committed.

Let the judgment be reversed, and the cause remanded for further proceedings.